# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

**BECKY KEELING**                                                              **PLAINTIFF**

**V.**                          **CASE NO. 2:18-CV-139-BD**

**ANDREW SAUL, Commissioner,**
**Social Security Administration**                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

**I.    Introduction:**

On August 24, 2015, Becky Marie Keeling applied for Title II disability insurance benefits, alleging disability beginning December 31, 2014. (Tr. at 15) Ms. Keeling's claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 29) Ms. Keeling requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1-5) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Ms. Keeling filed this case seeking judicial review of the decision denying her benefits.

**II.   The Commissioner's Decision:**

The ALJ found that Ms. Keeling had not engaged in substantial gainful activity from her alleged onset date of December 31, 2014 through December 31, 2017, when she last met the insured status requirements. (Tr. at 17) At step two of the five-step analysis, the ALJ found that Ms. Keeling had the following severe impairments: disorder of the back and anxiety. (Tr. at 18)

After finding that Ms. Keeling's impairments did not meet or equal a listed impairment, the ALJ determined that Ms. Keeling had the residual functional capacity ("RFC") to perform light work, with additional limitations. (Tr. at 18-21) She could only frequently stoop or crouch. (*Id.*) Also, mentally, she was limited to semi-skilled work where interpersonal contact is routine but superficial, the complexity of tasks is learned by experience, involves several variables, uses judgment within limits, and the supervision required is little for routine but detailed for non-routine tasks. (*Id.*)

The ALJ next found that Ms. Keeling could perform her past relevant work as a general clerk and billing clerk. (Tr. at 26-27) Relying on the testimony of a Vocational Expert ("VE"), the ALJ also found, based on Ms. Keeling's age, education, work experience and RFC, that she could perform work in the national economy as a utility teller and food sales clerk. (Tr. at 28) Based on these findings, the ALJ held that Ms. Keeling was not disabled. (Tr. at 28-29)

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016) (quoting *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The Court must consider not only evidence that supports the Commissioner's

decision, but also evidence that supports a contrary outcome. *Id*. (quoting *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010)). The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir.1996)).

  B. Ms. Keeling's Argument on Appeal

Ms. Keeling contends that the ALJ's decision to deny benefits is not supported by substantial evidence. Specifically, she argues that the ALJ erred by discounting the opinions of treating physicians Crosby and Allen and consulting physician Webber and instead relied on the opinions of state agency physicians who did not actually examine her. (#9 at 10) After reviewing the record, the Court concludes that the ALJ did not err in denying benefits.

  1. Relevant Facts

Ms. Keeling was 46 years old at the time of the hearing, and she lived alone. (Tr. at 37) She was a high school graduate and had taken some college courses. (Tr. at 37) She had past work as a secretary for her husband's farm business, but that employment ended when she and her husband divorced. (Tr. at 40-41) She reported that she was able to care for her granddaughter occasionally and care for her pets. She reported no problem with personal care. She went outside daily, performed simple chores, and was able to drive. (Tr. at 224-32, 255-62)

Glenn Allen Cosby, M.D., diagnosed Ms. Keeling with lumbar spondylosis at L5-S1; and in November 2008, Ms. Keeling had a "[l]eft-sided L5-S1 decompressive hemilaminectomy, total fasciectomy, and total discectomy with foraminotomy." (Tr. at 287) In appointments following her back surgery in January, March, June, and September of 2009 and in February 2010, Ms. Keeling reported to Dr. Cosby that her pain had improved. (Tr. at 292-299) Additionally, on examinations throughout this period, Dr. Cosby reported essentially normal examinations and x-rays. (*Id.*)

At a follow-up appointment with Dr. Cosby in June 2010, Ms. Keeling reported radicular pain; but on examination, Dr. Cosby noted that Ms. Keeling had no straight-leg pain and good fusion at L5-S1, as shown on her x-rays. (Tr. at 290) Dr. Cosby referred Ms. Keeling for a second opinion to assess whether she needed nerve root decompression surgery. (Tr. at 290) Julius Fernandez, M.D., performed a second back surgery on Ms. Keeling in 2012. Following the left L5-S1 removal of rod and decompression, Ms. Keeling reported that she felt much better and that her left L5 pain had improved. (Tr. at 329-32, 485)

Joseph E. Allen, M.D., Ms. Keeling's primary care physician, examined her in February 2015. At that time, Ms. Keeling complained of low-back pain. On examination, Dr. Allen found Ms. Keeling to be in the same condition she was in 2013.[1] Dr. Allen diagnosed chronic left-lumbar radiculopathy and chronic anxiety. He refilled her Clonazepam and told her to lose some weight with diet and exercise. (Tr. at 376)

---

[1] Ms. Keeling's treatment records from 2013 are not in the transcript.

Manuel F. Carro, M.D., examined Ms. Keeling in June 2015 for complaints of neuropathic pain in both lower extremities. She reported that Tramadol relieved her pain but that a transforaminal block did not help. (Tr. at 361) On examination, Dr. Carro found that Ms. Keeling had no ankle jerks; her toes were down-going; she had no muscle spasms; and her mood and affect were stable. (Tr. at 362) Dr. Carro diagnosed left S1 radiculopathy and chronic lumbar post-laminectomy syndrome. He told Ms. Keeling to continue taking Tramadol; and he referred her to a pain clinic. (Tr. at 363)

In January 2016, David Lee Webber, D.O., performed a consultative physical examination of Ms. Keeling. (Tr. at 387) On examination, Dr. Webber noted that Ms. Keeling had normal range of motion with no swelling or tenderness in her extremities; and, spine and her straight-leg raising was negative. (Tr. 385-86) He also noted that Ms. Keeling could pick up a coin, stand or walk without an assistive device, walk on heels and toes, and squat/rise from a squatting position. He diagnosed Ms. Keeling with low back pain due to multiple surgeries, irritable bowel syndrome, depression, and fibromyalgia. He opined that she was severely limited in her ability to walk, stand, sit, lift, and carry. (Tr. at 387)

Kenneth B. Jones, Ph.D., performed a consultative mental evaluation of Ms. Keeling in February 2016. (Tr. at 390-94) Dr. Jones noted that Ms. Keeling walked slowly and carefully and appeared limited physically. (Tr. at 390) Ms. Keeling reported that her primary care physician had diagnosed her with anxiety since 2004 and had treated her with Klonipin since that time. (Tr. at 390) She reported never having had

counseling; nor had she been hospitalized for mental health problems. (Tr. 390) Dr. Jones diagnosed anxiety disorder and adjustment disorder with depressed mood. (Tr. at 393) He opined that Ms. Keeling's physical limitations would interfere with her work stamina. (Tr. at 394) But, he advised that Ms. Keeling would not have limitations in adaptive functioning or social functioning and noted that she had average ability to cope with typical mental demands of basic work-like tasks and to sustain concentration on basic tasks. (Tr. at 393)

In notes from a follow-up visit in March 2016, Dr. Allen considered Ms. Keeling to be "completely and permanently disabled because of the failed back syndrome and all meaningful work." (Tr. at 401) He again advised Ms. Keeling to lose weight with diet and exercise; and he prescribed an anti-depressant (Zoloft). (Tr. 401-02)

Dr. Carro examined Ms. Keeling in June 2016 for complaints of pain radiating down both legs. (Tr. at 416) On examination, she had some left multifidus trigger points, but her toes were down-going, and she had no muscle spasms. (Tr. at 417) Her mood and affect were stable. (Tr. at 417) He diagnosed chronic lumbar radiculopathy and neuropathic pain. (Tr. at 418) Lumbar x-rays showed the previous L5-S1 transforaminal lumbar interbody fusion and mild degenerative disc disease at L3-L4 and L4-L5, worsened with flexion. (Tr. at 420) He prescribed Celebrex and recommended she be evaluated for a spinal cord stimulator. (Tr. at 418)

Dr. Allen examined Ms. Keeling in April 2017 for complaints of chronic low back pain that was worse at times. She stated that the last two or three nerve blocks had not

been beneficial. Dr. Carro had recommended a spinal cord stimulator, but Ms. Keeling was afraid to have the procedure and wanted to focus instead on physical therapy and medications. Dr. Allen prescribed Celebrex and Tramadol and was instructed to find a place near her home to have physical therapy. (Tr. at 458-59)

Dr. Crosby examined Ms. Keeling in August 2017 for persistent radiculopathy in the left leg with some back pain, for which she occasionally took Ultram. He noted that Ms. Keeling has suspected reflex sympathetic dystrophy of the left leg. (Tr. at 423) On examination, Ms. Keeling had pain with straight leg raising on the left. Dr. Crosby stated he did not believe "she is going to be able to work. She certainly can't stand very long and can't strain her back." (Tr. 424) A medical source statement physical with Dr. Crosby's stamped signature stated that he had already opined that Ms. Keeling would be unable to work so would be unable to perform the activities inquired about on the form. (Tr. 482-96)

2. Opinion Evidence

Ms. Keeling argues that the ALJ erred by discounting the opinions of Dr. Webber, Dr. Allen and Dr. Crosby. (#9 at 10) The ALJ considered the opinion evidence in accordance with the requirements of 20 CFR 404.1527. (Tr. at 21) He concluded that the opinions of Drs. Webber, Allen, and Crosby should be given "little weight" because they were inconsistent with other objective medical findings, as well as with other substantial evidence in the record. (Tr. at 25)

7

A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

Here, the ALJ considered Dr. Webber's consultative report, but gave it little weight because his notes were illegible; the limitations identified were not supported by the legible examination notes; and his conclusion that Ms. Keeling was severely limited was vague and did not include any specific functional limitations. (Tr. at 25-26) For example, Dr. Webber found that Ms. Keeling had normal range of motion in her extremities and spine, with no swelling; he also noted she could pick up a coin, stand/walk without an assistive device, could walk on heels and toes and squat. And yet, he found she was severely limited in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak. (281-88) The ALJ's decision to give Dr. Webber's report little weight is supported by substantial evidence.

The ALJ also considered Dr. Allen's opinion that Ms. Keeling is "completely and permanently disabled because of the failed back syndrome." (Tr. 401) The ALJ, however, properly discounted Dr. Allen's opinion, because it was a conclusory statement that did not assess her specific abilities to function in the workplace. See 20 C.F.R. § 404.1527(d); *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (citing *Ellis v.*

*Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)) (conclusory statements that a claimant is unable to work is not entitled to deference because that is a judgment reserved for the Commissioner).

Additionally, at the same office visit when he declared her permanently and completely disabled—and thereafter at most office visits—Dr. Allen advised Ms. Keeling to lose weight with diet and exercise. (Tr. at 368, 376, 401, 459, 466) In a letter dated February 26, 2015, Dr. Allen instructed Ms. Keeling to "try to get regular aerobic [exercise] for at least 4 days a week for at least 30 minutes each session." (Tr. at 370) A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

Dr. Allen's treatment records do not provide detailed physical findings. In treatment records from her visits from February 2015 to April 2017, for example, Dr. Allen reported that Ms. Keeling's physical exam is "about the same as Dr. Austin's note on 07/08/2013," which is not in the record. (Tr. at 367, 377, 402, 459, 466) In February 2015 Ms. Keeling reported to Dr. Allen that she could tolerate her back pain with her current medication. (Tr. at 377) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). The ALJ did not err in discounting Dr. Allen's opinion.

Finally, Dr. Crosby performed Ms. Keeling's first surgery in 2008. (Tr. at 287-89) He provided follow-up treatment for Ms. Keeling for 18 months after surgery, until June 2010, when he sent her for a second opinion regarding nerve root compression (Tr. 290)

During the examinations following her surgery, Dr. Crosby noted that Ms. Keeling's pain had decreased since surgery and that she continued to improve despite some left leg pain. (Tr. at 290-99)

Ms. Keeling returned to Dr. Crosby for treatment seven years later, in August 2017. At that visit, Ms. Keeling reported persistent radiculopathy in the left leg, with some back pain for which she took the occasional Ultram. On examination, she had pain with straight-leg raising on the left, but no pain on the right. Dr. Crosby diagnosed Ms. Keeling with persistent reflex dystrophy syndrome "in setting" of two prior fusions. (Tr. 423, 424) Based on this one examination of Ms. Keeling during the relevant period, Dr. Crosby opined that he did not believe Ms. Keeling would be able to work. (Tr. 424) A Medical Source Statement-Physical dated September 28, 2017, with Dr. Crosby's stamped signature, states that he had already stated that Ms. Keeling would be unable to work so he did not respond to any questions related to her ability to perform certain work-related tasks such as lifting, walking, standing, and sitting.

Dr. Crosby treated Ms. Keeling once during the relevant time period. Then, based on this 2017 examination, he opined that she could not work, but made no effort to address her abilities to perform work-related tasks. This conclusory opinion is not entitled to great weight. *McDade*, 720 F.3d at 994, 1000 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)) (conclusory statements that a claimant is unable to work is not entitled to deference because that is a judgment reserved for the Commissioner).

The treating doctors' opinions were both of little value, because the opinions were conclusory and provided little-to-no citation to medical evidence to support the opinion. See *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The mild objective testing results and mostly normal clinical examinations throughout Ms. Keeling's history do not support a finding of severe limitations. Additionally, Ms. Keeling's ability to engage in activities of daily living, her positive response to medication, and Dr. Allen's continuous recommendation to exercise and lose weight undermine the doctors' conclusions. The ALJ properly considered the medical evidence as a whole; and the weight afforded the opinions of Drs. Webber, Allen, and Crosby was not error.

## IV. **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Ms. Keeling was not disabled. The ALJ gave proper weight to all medical opinions. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 3rd day of September 2019.

_____
UNITED STATES MAGISTRATE JUDGE